IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE UNITED STATES, | ) ) ) ) |
| Plaintiff, | ) ) ) Case No. 24-233 |
| v. | ) ) |
| COURTSIDE MARKET LLC, | ) ) ) ) |
| Defendant. | ) ) |

# COMPLAINT

The United States, by and through its undersigned attorneys, hereby brings this action and alleges the following:

1. This is an action to recover civil monetary penalties pursuant to 19 U.S.C. § 1592, relating to two customs entries of inkjet rolls.

2. This Court has exclusive jurisdiction to entertain this action pursuant to 28 U.S.C. § 1582.

3. Plaintiff, the United States, through the United States Customs and Border Protection (CBP), is charged, in part, with fixing the final amount of duty to be paid on imported merchandise and determining any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited. 19 U.S.C. § 1500(c).

4. At all times relevant to the matters described in this complaint, defendant, Courtside Market LLC, upon information and belief, was incorporated in the State of New York, with a principal business address of 16884 Strasbourg Lane, Delray Beach, FL 33446, and an alternative business address of 1065 SW 15th Ave, Building C-1, Delray Beach, FL 33444.

5.      Courtside Market LLC served as the importer of record for the two entries covered by this court action (hereinafter, referred to as the "subject entries"), which are identified in the loss of revenue calculation summary attached as Exhibit A at entries U4707092696 and U4708032717.

6.      Courtside Market LLC filed the subject entries between December 12, 2017, and April 26, 2018, at the Newark, New Jersey port of entry.

7.      The imported merchandise covered by the subject entries (hereinafter, referred to as the "imported merchandise") consisted of 100 percent woven polyester inkjet fabric rolls.

8.      The inkjet fabric rolls originated in the People's Republic of China (China or the PRC).

9.      During the timeframe that the imported merchandise entered the United States, inkjet fabric rolls from the People's Republic of China were subject to an antidumping duty order. *See Notice of Antidumping Order: Certain Artist Canvas from the PRC*, 71 Fed. Reg. 31,154 (June 1, 2006) (Antidumping Duty Order). *See* Exhibit B

10.     The inkjet fabric rolls described within the Antidumping are new 100 percent woven polyester fabric coated with acrylic.

11.     The scope of the Antidumping Duty Order is reflected in the attached Exhibit B, which is incorporated by reference herein, and provides in relevant part as follows:

> The products covered by this order are artist canvases regardless of dimension and/or size, whether assembled or unassembled, that have been primed/coated, whether or not made from cotton, whether or not archival, whether bleached or unbleached, and whether or not containing an ink receptive top coat. Priming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric.  Artist canvases (i.e., pre-stretched canvases, canvas panels, canvas pads, canvas rolls (including bulk rolls that have been primed), printable canvases, floor cloths, and placemats) are tightly woven prepared painting and/or printing surfaces.  Artist

2

>canvas and stretcher strips (whether or not made of wood and whether or not assembled) included within a kit or set are covered by this proceeding.

71 Fed. Reg. 31,155 (June 1, 2006).

12. The Antidumping Duty Order indicates what Harmonized Tariff Schedule was to be used:

>Artist canvases subject to this order are currently classifiable under subheadings 5901.90.20.00 and 5901.90.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").

*Id*.

13. Excluded from the Antidumping Order was products like,

>tracing cloths, "paint-by-number" or "paint-it-yourself" artist canvases with a copyrighted preprinted outline, pattern, or design, whether or not included in a painting set or kit.1.  Also excluded are stretcher strips, whether or not made from wood, so long as they are not incorporated into artist canvases or sold as part of an artist canvas kit or set.

*Id.*

14. None of these exceptions applies to the subject merchandise.

15. Between December 12, 2017, and April 26, 2018, Courtside Market LLC entered inkjet fabric rolls into the United States from China under the two subject entries. *See* Exhibit A.

16. In the entry documents covering these entries, Courtside Market LLC identified the entries incorrectly as inkjet fabric rolls, classified under HTSUS code 5903.90.1000 which applies to only goods made of cotton.

17. The correct classification was HTS 5903.90.2500 because the fabric was 100 percent woven polyester fabric coated with acrylic.

18. Courtside Market LLC filed the entries as type 01 consumption, not type 03 antidumping and/or countervailing as required.

19. Courtside Market LLC failed to pay the required cash deposits corresponding to the antidumping duty order on inkjet fabric rolls from China.

20. Courtside Market LLC failed to properly classify the subject merchandize pursuant to 19 U.S.C. § 1484(a)(2)(A).

21. Consequently, on April 12, 2019, CBP issued a decision finding that Courtside Market LLC must pay $44,643.81 for the antidumping duties and remaining classification duties due on Entry U4708032717, $2,246.25 in interest, and that the subject merchandise should be reclassified as Type 03 from Type 01.

22. On August 14, 2019, Courtside Market LLC filed a timely protest against CBP's decision to change Entry U4708032717 from Type 01 to Type 03.

23. On September 24, 2019, CBP denied the protest because Courtside Market LLC failed to demonstrate why the inkjet rolls were not subject to the antidumping case and because antidumping duty rates are not protestable per 19 U.S.C. § 1514.

24. During the timeframe when the imported merchandise entered the United States, the antidumping duty rate for inkjet polyester fabric rolls, as required by the Antidumping Duty Order, was 264.09 percent *ad valorem*.

25. As a result of misclassifying the subject merchandise as Type 01, and thus not subject to an antidumping case, Courtside Market LLC did not pay antidumping duty cash deposits for the imported merchandise.

26. As a result of Courtside Market LLC's omission for both entries, the United States faced a potential loss of revenue in the amount of approximately $89,744.73.

27. CBP then issued a pre-penalty notice to Courtside Market LLC proposing a $424,235.57 penalty under 19 U.S.C. § 1592(a) at the culpability level of negligence for a total of ten entries—eight of which are not at issue in this complaint.

28. CBP subsequently issued a final penalty notice to Court of $424,235.57 at a culpability level of negligence under 19 U.S.C. § 1592(a) for a total of ten entries—eight of which are not at issue in this complaint.

29. On November 16, 2023, Courtside Market LLC submitted an offer in Compromise pursuant to 19 U.S.C. § 1617 for the amount of $1,000.00 and forty-seven additional $1,000 monthly payments.

30. On August 26, 2024, CBP rejected Courtside Market LLC's offer in compromise.

31. CBP has exhausted all administrative remedies.

## **COUNT I**

32. The allegations contained in paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. Section 1592 of Title 19, United States Code, imposes civil penalties for material false statements or acts, or material omissions, made in connection with the introduction or entry of merchandise.

34. Courtside Market LLC entered or introduced the imported merchandise into the commerce of the United States by means of a document or electronically transmitted data or information, written or oral statement, or act which was material and false, or by means of an omission that was material. *See* 19 C.F.R. Pt. 171, App. B (B).

35. Courtside Market LLC made a material omission by failing to list the antidumping case applicable to Chinese inkjet fabric rolls on entry documents for two shipments.

36. The false statements, acts, or omissions described in paragraph 34 were material because they influenced Custom and Border Protection's determination of Courtside Market LLC's liability for duties, resulting in a total potential loss of revenue of $89,744.73.

37. The material false statements, acts, or omissions described above constitute negligent violations of 19 U.S.C. § 1592(a).

38. As a result of the negligent violations of 19 U.S.C. § 1592(a) described above, pursuant to 19 U.S.C. § 1592(c)(3), Courtside Market LLC is liable for a penalty for negligence in the amount of approximately $179,489.46 which represents two times the lawful duties, taxes, and fees of which the United States was deprived.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests that the Court enter judgment for the United States against defendant Courtside Market LLC for $89,744.73 in duties, a civil penalty of $179,489.46 for violations of 19 U.S.C. § 1592(a)(1)(A) at a culpability level of negligence, plus interest provided by law, and such other relief as this Court deems just and appropriate.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

Of Counsel:
ALEXANDRA KAPHLE
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

/s/ Tate N. Walker
TATE N. WALKER
Trial Attorney
Department of Justice, Civil Division

|  |  |
|---|---|
|  | Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Telephone: (202)<br>Facsimile: (202) 307-0163<br>Tate.Walker@usdoj.gov |
| Dated: December 12, 2024 | *Attorneys for Plaintiff* |

# Exhibit A

**Courtside Market LLC**
**Appraisal Worksheet**

| Entry Number | Entry Date | Liq Date | Entered HTS | Corrected Classification | Duty paid at Entry | Total duty paid | Duty Due | C/O | Port of Entry | Entered Value | Domestic Value | Correct ADD Case Number | Correct Deposit Rate | ADD Due | ADD Paid | Potential Loss of Revenue | Actual Loss of Revenue | Total Loss of Revenue | Bond # | Bond Amount | Surety # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BWR00860037 | 6/25/2015 | 05/06/2016 | 5903.90.1000 | 5903.90.2500 | $197.34 | $197.34 | $548.18 | CN | 4601 | $7,309.00 | $27,193.97 | A-570-899-000 | 264.09% | $19,302.34 | $0.00 | $0.00 | $19,653.17 | $19,653.17 | 1118176 | $8,000.00 | 036 |
| U4706261292 | 10/14/2015 | 08/26/2016 | 5903.90.1000 | 5903.90.2500 | $303.75 | $303.75 | $843.75 | CN | 4601 | $11,250.00 | $41,856.91 | A-570-899-000 | 264.09% | $29,710.13 | $0.00 | $0.00 | $30,250.13 | $30,250.13 | 3703451 | $12,000.00 | 050 |
| U4706293279 | 1/25/2016 | 12/09/2016 | 5903.90.1000 | 5903.90.2500 | $304.99 | $304.99 | $847.20 | CN | 4601 | $11,296.00 | $42,028.06 | A-570-899-000 | 264.09% | $29,831.61 | $0.00 | $0.00 | $30,373.82 | $30,373.82 | 3703451 | $12,000.00 | 050 |
| U4706323209 | 5/16/2016 | 03/31/2017 | 5903.90.1000 | 5903.90.2500 | $308.69 | $308.69 | $857.48 | CN | 4601 | $11,433.00 | $42,537.78 | A-570-899-000 | 264.09% | $30,193.41 | $0.00 | $0.00 | $30,742.19 | $30,742.19 | 16S001XE9 | $12,000.00 | 050 |
| U4706518329 | 8/10/2016 | 06/23/2017 | 5903.90.1000 | 5903.90.2500 | $353.38 | $353.38 | $981.60 | CN | 4601 | $13,088.00 | $48,695.40 | A-570-899-000 | 264.09% | $34,564.10 | $0.00 | $0.00 | $35,192.32 | $35,192.32 | 16S003YVM | $14,000.00 | 050 |
| U4706547807 | 11/1/2016 | 09/15/2017 | 5903.90.1000 | 5903.90.2500 | $308.10 | $308.10 | $855.83 | CN | 4601 | $11,411.00 | $42,455.93 | A-570-899-000 | 264.09% | $30,135.31 | $0.00 | $0.00 | $30,683.03 | $30,683.03 | 16S006016 | $12,000.00 | 050 |
| U4707025639 | 3/30/2017 | 02/09/2018 | 5903.90.1000 | 5903.90.2500 | $311.66 | $311.66 | $865.73 | CN | 4601 | $11,543.00 | $42,947.05 | A-570-899-000 | 264.09% | $30,483.91 | $0.00 | $0.00 | $31,037.97 | $31,037.97 | 17S009VXO | $13,000.00 | 050 |
| U4707050199 | 7/26/2017 | 06/08/2018 | 5903.90.1000 | 5903.90.2500 | $286.90 | $286.90 | $796.95 | CN | 4601 | $10,626.00 | $39,535.24 | A-570-899-000 | 264.09% | $28,062.20 | $0.00 | $0.00 | $28,572.25 | $28,572.25 | 17S00D5WA | $12,000.00 | 050 |
| U4707092696 | 12/12/2017 | 10/26/2018 | 5903.90.1000 | 5903.90.2500 | $452.87 | $452.87 | $1,257.98 | CN | 4601 | $16,773.00 | $62,405.86 | A-570-899-000 | 264.09% | $44,295.82 | $0.00 | $0.00 | $45,100.92 | $45,100.92 | 17S00H0KJ | $18,000.00 | 050 |
| U4708032717 | 4/26/2018 | 04/12/2019 | 5903.90.1000 | 5903.90.2500 | $448.28 | $1,245.23 | $1,245.23 | CN | 4601 | $16,603.00 | $61,773.35 | A-570-899-000 | 264.09% | $43,846.86 | $565.55 | $44,643.81 | $0.00 | $44,643.81 | 18S0031CF | $18,000.00 | 050 |
|  |  |  |  |  | $3,275.96 | $4,072.91 | $9,099.90 |  |  | $121,332.00 | $451,429.54 |  |  | $320,425.68 | $565.55 | $44,643.81 | $281,605.81 | $326,249.62 |  | $131,000.00 |  |

Calculations: The Domestic Value is $451,429.54. This was calculated using the correct invoiced value of the merchandise ($121,332), the AD duties that should have been collected ($320,425.68), the other fees and duty that were collected ($9,671.86), the freight/shipping charges (unknown so not applied) and the brokers fees (unknown so not applied).

Appraising Officer: /s/ Jennifer Murrell
Jennifer Murrell

Supervisor of Appraising Officer: /s/ John M Sullivan
John M. Sullivan

Date: 9/30/2019

Case 1:24-cv-00233-N/A     Document 4     Filed 12/12/24     Page 10 of 13

# Exhibit B

regulations on submission of proprietary information and eligibility to receive access to business proprietary information under APO can be found at 19 CFR 351.304–306.

## Information Required From Interested Parties

Domestic interested parties (defined in section 771(9)(C), (D), (E), (F), and (G) of the Act and 19 CFR 351.102(b)) wishing to participate in these Sunset Reviews must respond not later than 15 days after the date of publication in the **Federal Register** of this notice of initiation by filing a notice of intent to participate. The required contents of the notice of intent to participate are set forth at 19 CFR 351.218(d)(1)(ii). In accordance with the Department's regulations, if we do not receive a notice of intent to participate from at least one domestic interested party by the 15-day deadline, the Department will automatically revoke the orders without further review. *See* 19 CFR 351.218(d)(1)(iii).

If we receive an order-specific notice of intent to participate from a domestic interested party, the Department's regulations provide that *all parties* wishing to participate in the Sunset Review must file complete substantive responses not later than 30 days after the date of publication in the **Federal Register** of this notice of initiation. The required contents of a substantive response, on an order-specific basis, are set forth at 19 CFR 351.218(d)(3). Note that certain information requirements differ for respondent and domestic parties. Also, note that the Department's information requirements are distinct from the Commission's information requirements. Please consult the Department's regulations for information regarding the Department's conduct of Sunset Reviews.[1] Please consult the Department's regulations at 19 CFR Part 351 for definitions of terms and for other general information concerning antidumping and countervailing duty proceedings at the Department.

This notice of initiation is being published in accordance with section 751(c) of the Act and 19 CFR 351.218(c).

---

[1] In comments made on the interim final sunset regulations, a number of parties stated that the proposed five-day period for rebuttals to substantive responses to a notice of initiation was insufficient. This requirement was retained in the final sunset regulations at 19 CFR 351.218(d)(4). As provided in 19 CFR 351.302(b), however, the Department will consider individual requests for extension of that five-day deadline based upon a showing of good cause.

Dated: May 22, 2006.
**Thomas F. Futtner,**
*Acting Office Director, AD/CVD Operations, Office 4 for Import Administration.*
[FR Doc. E6–8510 Filed 5–31–06; 8:45 am]
**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

**Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Advance Notification of Sunset Reviews**

**AGENCY:** Import Administration, International Trade Administration, Department of Commerce
**ACTION:** Notice of upcoming sunset reviews.

### Background

Every five years, pursuant to section 751(c) of the Tariff Act of 1930, as amended, the Department of Commerce ("the Department") and the International Trade Commission automatically initiate and conduct a review to determine whether revocation of a countervailing or antidumping duty order or termination of an investigation suspended under section 704 or 734 would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury. As a courtesy, the Department provides advance notice of these cases that are scheduled for sunset reviews one month before those reviews are initiated.

**FOR FURTHER INFORMATION CONTACT:** Zev Primor, Office 4, AD/CVD Operations, Import Administration, International Trade Administration, U.S. Department of Commerce at (202) 482–4114.

### Upcoming Sunset Reviews

There are no sunset reviews scheduled for initiation in July 2006.

For information on the Department's procedures for the conduct of sunset reviews, *See* 19 CFR 351.218. This notice is not required by statute but is published as a service to the international trading community. Guidance on methodological or analytical issues relevant to the Department's conduct of sunset reviews is set forth in the Department's Policy Bulletin 98.3, "Policies Regarding the Conduct of Five-Year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders;" Policy Bulletin, 63 FR 18871 (April 16, 1998) ("Sunset Policy Bulletin"). The Notice of Initiation of Five-Year ("Sunset") Reviews provides further information regarding what is required of all parties to participate in sunset reviews.

Dated: May 19, 2006.
**Thomas F. Futtner,**
*Acting Office Director, AD/CVD Operations, Office 4, Import Administration.*
[FR Doc. E6–8512 Filed 5–31–06; 8:45 am]
**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

[A–570–899]

**Notice of Antidumping Duty Order: Certain Artist Canvas from the People's Republic of China**

**AGENCY:** Import Administration, International Trade Administration, Department of Commerce.
**SUMMARY:** Based on affirmative final determinations by the Department of Commerce ("the Department") and the International Trade Commission ("ITC"), the Department is issuing an antidumping duty order on certain artist canvas from the People's Republic of China ("PRC"). On May 15, 2006, the ITC notified the Department of its affirmative determination of material injury to a U.S. industry (*Artist Canvas from China*, Investigation No. 731–TA–1091 (Final), Publication 3853, May 2006).

**EFFECTIVE DATE:** June 1, 2006.

**FOR FURTHER INFORMATION CONTACT:** Michael Holton, Import Administration, International Trade Administration, U.S. Department of Commerce, 14th Street and Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–1324.

**SUPPLEMENTARY INFORMATION:**

### Background

In accordance with section 735(d) and 777(i)(1) of the Tariff Act of 1930, as amended ("the Act"), on March 30, 2006, the Department published the *Notice of Final Determination of Sales at Less Than Fair Value: Certain Artist Canvas from the People's Republic of China*, 71 FR 16116 (March 30, 2006) ("*Final Determination*"). A notice of correction was published on May 8, 2006 to correct one of the exporter and producer names that was published in the Final Determination. *See Notice of Correction to Notice of Final Determination of Sales at Less Than Fair Value: Certain Artist Canvas from the People's Republic of China*, 71 FR 26735 (May 8, 2006).

**Scope of Order**

The products covered by this order are artist canvases regardless of dimension and/or size, whether assembled or unassembled, that have been primed/coated, whether or not made from cotton, whether or not archival, whether bleached or unbleached, and whether or not containing an ink receptive top coat. Priming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric. Artist canvases (*i.e.*, pre–stretched canvases, canvas panels, canvas pads, canvas rolls (including bulk rolls that have been primed), printable canvases, floor cloths, and placemats) are tightly woven prepared painting and/or printing surfaces. Artist canvas and stretcher strips (whether or not made of wood and whether or not assembled) included within a kit or set are covered by this proceeding.

Artist canvases subject to this order are currently classifiable under subheadings 5901.90.20.00 and 5901.90.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Specifically excluded from the scope of this order are tracing cloths, "paint–by-number" or "paint–it-yourself" artist canvases with a copyrighted preprinted outline, pattern, or design, whether or not included in a painting set or kit.[1] Also excluded are stretcher strips, whether or not made from wood, so long as they are not incorporated into artist canvases or sold as part of an artist canvas kit or set. While the HTSUS subheadings are provided for convenience and customs purposes, our written description of the scope of this proceeding is dispositive.

Additionally, we have determined that canvas woven and primed in India but cut and stretched in the PRC and exported from the PRC is not subject to the order covering artist canvas from the PRC.

**Antidumping Duty Order**

On May 15, 2006, in accordance with section 735(d) of the Act, the ITC notified the Department of its final determination pursuant to section 735(b)(1)(A)(i) of the Act that an industry in the United States is materially injured by reason of less–than-fair–value imports of subject merchandise from the PRC. Therefore, in accordance with section 736(a)(1) of the Act, the Department will direct U.S. Customs and Border Protection ("CBP") to assess, upon further instruction by the Department, antidumping duties equal to the amount by which the normal value of the merchandise exceeds the export price (or constructed export price) of the merchandise for all relevant entries of certain artist canvas from the PRC. These antidumping duties will be assessed on all unliquidated entries of certain artist canvas from the PRC entered, or withdrawn from the warehouse, for consumption on or after November 7, 2005, the date on which the Department published its *Notice of Preliminary Determination of Sales at Less Than Fair Value: Certain Artist Canvas from the People's Republic of China*, 70 FR 67412 (November 7, 2005) ("*Preliminary Determination*").

Section 733(d) of the Act states that instructions issued pursuant to an affirmative preliminary determination may not remain in effect for more than four months except where exporters representing a significant proportion of exports of the subject merchandise request the Department to extend that four–month period to no more than six months. At the request of exporters that account for a significant proportion of the PRC exports of the subject merchandise, we extended the four–month period to no more than six months. *See Preliminary Determination*. In this investigation, the six–month period beginning on the date of the publication of the preliminary determination ends on May 5, 2006. Furthermore, section 737 of the Act states that definitive duties are to begin on the date of publication of the ITC's final injury determination. Therefore, in accordance with section 733(d) of the Act and our practice, we will instruct CBP to terminate the suspension of liquidation and to liquidate, without regard to antidumping duties, unliquidated entries of artist canvas from the PRC entered, or withdrawn from warehouse, for consumption on or after May 6, 2006, and before the date of publication of the ITC's final injury determination in the **Federal Register**. Suspension of liquidation will resume on the date of publication of the ITC's final injury determination in the **Federal Register**.

Effective on the date of publication of the ITC's final affirmative injury determination, CBP officers will require, at the same time as importers would normally deposit estimated duties on this merchandise, a cash deposit equal to the estimated weighted–average antidumping duty margins as listed below. The "PRC–wide" rate applies to all exporters of subject merchandise not specifically listed. The weighted–average dumping margins are as follows:

ARTIST CANVAS FROM THE PRC - WEIGHTED–AVERAGE DUMPING MARGINS

| Exporter | Producer | Weighted–Average Deposit Rate |
| --- | --- | --- |
| Ningbo Conda | Jinhua Universal | 264.09 |
| Ningbo Conda | Wuxi Silver Eagle Cultural Goods Co. Ltd. | 264.09 |
| Conda Painting | Wuxi Pegasus Cultural Goods Co. Ltd. | 264.09 |
| Jinhua Universal | Jinhua Universal | 264.09 |
| Phoenix Materials | Phoenix Materials | 77.90 |
| Phoenix Materials | Phoenix Stationary | 77.90 |
| Phoenix Materials | Shuyang Phoenix | 77.90 |
| Phoenix Stationary | Phoenix Materials | 77.90 |
| Phoenix Stationary | Phoenix Stationary | 77.90 |
| Phoenix Stationary | Shuyang Phoenix | 77.90 |
| Jiangsu By–products | Wuxi Yinying Stationery and Sports Products Co. Ltd. Corp. | 77.90 |
| Jiangsu By–products | Su Yang Yinying Stationery and Sports Products Co. Ltd. Corp. | 77.90 |
| China–Wide Rate | ................ | 264.09 |

---

[1] Artist canvases with a non-copyrighted preprinted outline, pattern, or design are included in the scope, whether or not included in a painting set or kit.

This notice constitutes the antidumping duty order with respect to certain artist canvas from the PRC pursuant to section 736(a) of the Act. Interested parties may contact the Department's Central Records Unit, Room B–099 of the main Commerce building, for copies of an updated list of antidumping duty orders currently in effect.

This order is published in accordance with section 736(a) of the Act and 19 CFR 351.211.

Dated: May 24, 2006.

**David M. Spooner,**
*Assistant Secretary for Import Administration.*
[FR Doc. E6–8514 Filed 5–31–06; 8:45 am]
**BILLING CODE 3510–DS–S**

---

# DEPARTMENT OF COMMERCE

## International Trade Administration

[A–533–809]

### Notice of Final Results of Antidumping Duty Changed Circumstances Review; Certain Forged Stainless Steel Flanges From India

**AGENCY:** Import Administration, International Trade Administration, Department of Commerce.

**SUMMARY:** On March 9, 2006, the Department of Commerce (the Department) published a notice of preliminary results of changed circumstances review of the antidumping duty order on certain forged stainless steel flanges (flanges) from India in which we preliminarily determined that Hilton Metal Forging Ltd. (HMFL) is the successor–in-interest company to Hilton Forge. *See Notice of Preliminary Results of Antidumping Duty Changed Circumstances Review: Certain Forged Stainless Steel Flanges from India*, 71 FR 12177 (March 9, 2006) (*Preliminary Results*). We gave interested parties an opportunity to comment on the preliminary results, but received no comments. Therefore, the final results do not differ from the preliminary results.

**EFFECTIVE DATE:** June 1, 2006.

**FOR FURTHER INFORMATION CONTACT:** Fred Baker or Robert James, AD/CVD Operations, Office 7, Import Administration, International Trade Administration, U.S. Department of Commerce, 14th Street and Constitution Avenue, NW, Washington, DC 20230, telephone : (202) 482–2924 or (202) 482–0649, respectively.

**SUPPLEMENTARY INFORMATION:**

### Background

On November 14, 2005, Hilton Forge requested that the Department conduct a changed circumstances review of the antidumping duty order on flanges from India pursuant to section 751(b) of the Tariff Act of 1930, as amended (the Tariff Act), and 19 CFR 351.216. Hilton Forge claimed that HMFL is the successor–in-interest to Hilton Forge, the latter having converted itself from a partnership firm into a company limited by shares, and having changed its name to HMFL. As such, Hilton Forge argues HMFL should be entitled to receive the same antidumping treatment as Hilton Forge. On January 18, 2006, and February 3, 2006, at the request of the Department, HMFL submitted additional information and documentation pertaining to this changed circumstances request.

On March 9, 2006, the Department published the preliminary results of review, and invited interested parties to comment. *See Preliminary Results*. We received no comments.

### Scope of the Order

The products covered by this order are certain forged stainless steel flanges, both finished and not finished, generally manufactured to specification ASTM A–182, and made in alloys such as 304, 304L, 316, and 316L. The scope includes five general types of flanges. They are weld–neck, used for butt–weld line connection; threaded, used for threaded line connections; slip–on and lap joint, used with stub–ends/butt–weld line connections; socket weld, used to fit pipe into a machined recession; and blind, used to seal off a line. The sizes of the flanges within the scope range generally from one to six inches; however, all sizes of the above–described merchandise are included in the scope. Specifically excluded from the scope of this order are cast stainless steel flanges. Cast stainless steel flanges generally are manufactured to specification ASTM A–351. The flanges subject to this order are currently classifiable under subheadings 7307.21.1000 and 7307.21.5000 of the Harmonized Tariff Schedule of the United States (HTSUS). Although the HTS subheading is provided for convenience and customs purposes, the written description of the merchandise under review is dispositive.

### Final Results of Review

In antidumping duty changed circumstances reviews involving a successor–in-interest determination, the Department typically examines several factors including, but not limited to, changes in: (1) management; (2) production facilities; (3) supplier relationships; and (4) customer base. *See Brass Sheet and Strip from Canada: Notice of Final Results of Antidumping Administrative Review*, 57 FR 20460, 20462 (May 13, 1992) and *Certain Cut–to-Length Carbon Steel Plate from Romania: Initiation and Preliminary Results of Changed Circumstances Antidumping Duty Administrative Review*, 70 FR 22847 (May 3, 2005) (*unchanged in final*, 70 FR 35624 (June 21, 2005) (*Plate from Romania*). While no single factor or combination of factors will necessarily be dispositive, the Department generally will consider the new company to be the successor to the predecessor company if the resulting operations are similar to those of the predecessor company. *See, e.g., Industrial Phosphoric Acid from Israel: Final Results of Changed Circumstances Review*, 59 FR 6944, 6945 (February 14, 1994), and *Plate from Romania*, 70 FR 22847. Thus, if the record evidence demonstrates that, with respect to the production and sale of the subject merchandise, the new company operates as the same business entity as the predecessor company, the Department may assign the new company the cash deposit rate of its predecessor. *See, e.g., Fresh and Chilled Atlantic Salmon from Norway: Final Results of Changed Circumstances Antidumping Duty Administrative Review*, 64 FR 9979, 9980 (March 1, 1999).

We have examined the information HMFL provided, and determined that HMFL is the successor–in-interest to Hilton. Hilton Forge's name change to HMFL and its conversion from a limited partnership firm into a company limited by shares have not changed the operations of the company in a meaningful way. HMFL's management, production facilities, supplier relationships, sales facilities, and customer base are essentially unchanged from those of Hilton Forge. Therefore, the record evidence demonstrates that the new entity operates in the same manner as the predecessor company. Consequently, we determine that HMFL should receive the same antidumping duty treatment as Hilton Forge, *i.e.*, a 0.89 percent antidumping duty cash deposit rate.

### Instructions to U.S. Customs and Border Protection (CBP)

We will inform CBP that Hilton Forge no longer exists as a separate corporate entity, and that we will assign the same company–specific number to HMFL as we assigned to Hilton Forge. We will also instruct CBP that it should apply to